# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# WESTERN DIVISION

JERRY MCCLURE                                                                               PLAINTIFF

v.                                    NO. 4:17CV00424 JLH

LITTLE ROCK SCHOOL DISTRICT,
A Public Body Corporate                                                  DEFENDANT

## OPINION AND ORDER

Jerry McClure brings this lawsuit for race discrimination and retaliation against the Little Rock School District. His claims are based on the District's failure to promote him in 2014 and elimination of his position in 2015 during a reduction in force. *See* Document #1. The District moves for summary judgment. For the reasons to be explained, the motion is granted.

A court should grant summary judgment if the evidence demonstrates that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine dispute for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986). If the moving party meets that burden, the nonmoving party must come forward with specific facts that establish a genuine dispute of material fact. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986); *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). A genuine dispute of material fact exists only if the evidence is sufficient to allow a reasonable jury to return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). The Court must view the evidence in the light most favorable to the nonmoving party and must give that party the benefit of all reasonable inferences that can be drawn from the record. *Pedersen v. Bio-Med. Applications of Minn.*, 775 F.3d 1049, 1053 (8th Cir.

2015). If the nonmoving party fails to present evidence sufficient to establish an essential element of a claim on which that party bears the burden of proof, then the moving party is entitled to judgment as a matter of law. *Id.* The Eighth Circuit has made clear that "[t]here is no discrimination case exception to the application of summary judgment." *Torgerson*, 643 F.3d at 1043 (internal quotations and citations omitted).

McClure, an African American, was a Preventative Maintenance Foreman for seventeen years in the District's Maintenance and Operations Department. *See* Document #24. In 2008 he applied for but was denied the position of Preventative Maintenance Supervisor. Based on this non-selection, McClure sued the District for race discrimination in case number 4:10-cv-1172 SWW, which resulted in summary judgment for the District in March 2013.

In August 2014, McClure applied for the Maintenance and Operations Supervisor position. He interviewed with a panel of three individuals: Wayne Adams, who is Caucasian; and Kelsey Bailey and Dr. Lilly Bouie, who are both African American. Document #19-6 at 39. In this interview, McClure received a total score of 89 based on each interviewer's scores of McClure's answers to nine interview questions. *See* Document #24-1 at 7-12. A Caucasian individual, James Taggart, was selected instead. Taggart had held the Maintenance and Operations Supervisor position for more than a year on an interim basis. He scored a 123 in the interview.

McClure filed an EEOC charge related to his non-selection in February 2015. A little more than a month later, then-District Superintendent Dexter Suggs notified McClure that he recommended McClure's contract not be renewed for the following school year. After McClure received a hearing before three individuals, Johnny Key, the Arkansas Commissioner of Education, affirmed the recommendation not to renew McClure's contract. Document #19-6 at 64-67. This decision occurred as part of a reduction in force. There is no evidence that Key, or any of the

2

individuals on the hearing panel, knew about McClure's prior EEOC charges or prior lawsuit. *See* Document #67.

McClure brings his claims under 42 U.S.C. § 1981 and § 1983.[1] He first asserts race discrimination and retaliation based on the District's failure to promote him in August 2014. McClure presents no argument or evidence of direct discrimination, so his race discrimination claim is analyzed using the *McDonnell Douglas* framework. Under this framework, McClure must first make a prima facie showing of intentional discrimination. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04, 93 S. Ct. 1817, 1824-25, 36 L. Ed. 2d 668 (1973). To do so, McClure need only show that (1) he is a member of a protected group; (2) he was qualified and applied for a promotion to an available position; (3) he was denied the promotion; and (4) similarly situated employees outside of the protected group were promoted instead. *See Shannon v. Ford Motor Co.*, 72 F.3d 678, 682 (8th Cir. 1996); *see also Sallis v. Univ. of Minn.*, 408 F.3d 470, 476 (8th Cir. 2005) (explaining that a prima facie case requires a plaintiff to show "(1) that he is a member of a protected class; (2) that he was qualified for his position and performed his duties adequately; and (3) that he suffered an adverse employment action under circumstances that would permit the court to infer that unlawful discrimination was involved.").

---

[1] McClure brings his race discrimination and retaliation claims under 42 U.S.C. § 1981, which guarantees to all persons the same right to contract "as is enjoyed by white persons," and 42 U.S.C. § 1983, which protects against constitutional violations by individuals acting under color of state law. The Eighth Circuit has held that "[c]laims of discrimination under . . . section 1981 are analyzed under the [*McDonnell Douglas*] burden-shifting framework." *Roark v. City of Hazen, Ark.*, 189 F.3d 758, 761 (8th Cir. 1999); *see also Bennett v. Nucor Corp.*, 656 F.3d 802, 818 (8th Cir. 2011) ("The elements of claims alleging disparate treatment on the basis of race under Title VII and intentional employment discrimination on the basis of race under § 1981 are identical."). The Court also applies the "same analysis" to section 1981 retaliation claims as to Title VII retaliation claims, and Title VII precedent informs the Court's analysis of the section 1981 claims. *Sayger v. Riceland Foods, Inc.*, 735 F.3d 1025, 1030 (8th Cir. 2013). Finally, § 1983 claims based on equal protection violations are analyzed essentially the same as Title VII claims based on race. *Tipler v. Douglas Cnty., Neb.*, 482 F.3d 1023, 1027 (8th Cir. 2007).

If McClure makes out a prima facie case, the burden then shifts to the District to articulate a legitimate, nondiscriminatory reason for the hiring decision. *See McDonnell Douglas*, 411 U.S. at 802-03, 93 S. Ct. at 1824-25. If this "minimal" burden is met, McClure must show that the proffered reason is pretext for unlawful discrimination. *Id.* at 804, 93 S. Ct. at 1825. McClure must both rebut the proffered reason and provide evidence that the real reason for the move was unlawful discrimination. *See Johnson v. AT&T Corp.*, 422 F.3d 756, 763 (8th Cir. 2005). At all times, McClure bears the ultimate burden "of proof and persuasion" that he was the victim of unlawful discrimination. *See Torgerson*, 643 F.3d at 1046.

On the District's August 2014 failure to promote McClure, the District does not dispute that McClure has made out a prima facie case of race discrimination. The Court proceeds likewise. *See Tusing v. Des Moines Indep. Cmty. Sch. Dist.*, 639 F.3d 507, 515 (8th Cir. 2011). As its legitimate, non-discriminatory reason for not promoting McClure the District points out that Taggart scored higher than McClure on the interview responses, as he scored a 123 versus McClure's score of 89. A higher score on a job interview is a legitimate nondiscriminatory reason. *See Nelson v. USAble Mutual Ins. Co.*, 918 F.3d 990, 993 (8th Cir. 2019).

The District says that McClure cannot establish this reason was pretextual at step three of *McDonnell Douglas*. A plaintiff can show pretext by, among other things, showing that the employer's explanation is not worthy of credence because it has no basis in fact or that a prohibited reason more likely motivated the employer. *Id.* (citing *Torgerson*, 643 F.3d at 1046). McClure argues that he was the "far superior candidate for the position," that Taggart was preselected for the position, and that the District's subjective interview process attempted to neutralize his "obvious superior objective qualifications." Document #25 at 16, 22.

4

To show pretext based on a rejected applicant's qualifications, McClure must show that the District "hired a *less* qualified applicant." *Barber v. C1 Truck Driver Training, LLC*, 656 F.3d 782, 793 (8th Cir. 2011) (quoting *Kincaid v. City of Omaha*, 378 F.3d 799, 805 (8th Cir.2004)). McClure believes he was the superior candidate over Taggart because he has a college degree and he has more supervisory experience. True, McClure has a college degree while Taggart does not, but it is undisputed that the Maintenance and Operations Supervisor position did not require or prefer that the successful applicant have a college degree. Document #24 at 2. As to supervisory experience, Taggart had previously supervised six to ten employees for nine years, and had supervised more than twenty employees as interim Maintenance and Operations Supervisor prior to being interviewed for the permanent position. *See* Document #19-4 at 9-10. McClure had supervised sixteen to nineteen employees in his position with the District. *See* Document #19-6 at 26-27. "A comparative analysis of [their relevant] qualifications" gives the Court no reason to disbelieve the District's proffered reason for hiring Taggart over McClure. *See Nelson*, 918 F.3d at 993. Moreover, "[t]he fact that [McClure] may have been capable of filling the role of [Maintenance and Operations Supervisor], or that he has specific strengths as a candidate, does not show pretext." *Barber*, 656 F.3d at 793. The Court could parse the notes on the two men's interview answers and provide its own judgment as to whom the District should have hired, as McClure requests, but it is not the role of the Court to "sit as super-personnel departments to second-guess the business decisions of employers." *See Dorsey v. Pinnacle Automation Co.*, 278 F.3d 830, 837 (8th Cir. 2002).

McClure also believes that Taggart was preselected for the job. To support this contention, he points to the fact that the job did not require a college degree, and he also argues that the interviewers scored McClure and Taggart differently despite their similar answers.

5

"It is true that 'evidence of preselection and arbitrary manipulation of job requirements to benefit the pre-selected applicant may act to discredit the defendant's proffered explanation.'" *Nelson*, 918 F.3d at 994 (quoting *Tyler v. Univ. of Ark. Bd. of Trs.*, 628 F.3d 980, 988 (8th Cir. 2011)). In this case, however, McClure has provided no evidence to support his belief that Taggart was preselected. *See Woods v. Steel Related Tech., Inc.*, No. 3:09-cv-161-DPM (E.D. Ark, Mar. 31, 2011). He says it is "odd that an educational institution would discount the importance of a college degree," arguing that the job description, which did not require a college degree, was tailored to Taggart. Document # 25 at 21. But McClure presents no evidence that a college degree would make a person better able to perform the duties of the Maintenance and Operations Supervisor. The Court will not second-guess the District's facially neutral judgment in not requiring a degree for the position. *See Nelson*, 918 F.3d at 994 ("Nelson presents no evidence that the reduced requirements failed to accurately represent the responsibilities of the position." (alteration and quotations omitted)).

McClure also argues that because Taggart was placed as the interim maintenance supervisor years before, it is "obvious that Taggert (sic) had been preselected for the position." Document #25 at 20. However, this fact alone does not show that Taggart was preselected for the permanent position. McClure does not produce any evidence that Taggart's selection as interim maintenance supervisor raises an inference that Taggart was preselected for the position on a permanent basis several years later.

McClure next says that "[d]espite given (sic) similar answers to the [interview] questions posed, the scoring was vastly different." Document #25 at 16. He has not pointed the Court to specific problems with the scoring, but simply produced all of the notes on his and Taggart's interview responses scored by each of the three interviewers. *See* Document #24-1 at 1-12. Contrary

6

to his contention, though, based on these notes McClure and Taggart appear to have had different answers to each question. It is therefore only natural that their scores would differ. And there is no evidence that, for example, they provided the same answers to a particular question yet received different scores or that McClure had an objectively better answer yet received a lower score on that question. McClure has not provided evidence to create an inference Taggart was preselected for the position, and once again, the Court will not simply second-guess the District's apparently neutral business decisions. McClure has wholly failed to rebut the District's proffered reason for his non-promotion and provide evidence that the real reason was unlawful discrimination. *Johnson*, 422 F.3d at 763. He has therefore failed to show pretext on his race discrimination claim related to the 2014 failure to promote.

McClure also asserts that he was not promoted in retaliation for his lawsuit from four years before. Like on his discrimination claim, McClure must first establish a prima facie case of retaliation. He must demonstrate that he engaged in protected activity, that he suffered an adverse employment action, and a causal connection exists between the two. *Sayger*, 735 F.3d at 1030-31. The District would have to show a legitimate non-retaliatory reason for the adverse action. *Id.* The burden would then shift back to McClure to show that the proffered reason was pretextual. *Id.*

On this claim the District attacks the causation element of McClure's prima facie case. It argues that McClure simply lacks any evidence that his 2010 lawsuit had a connection to the District's decision not to promote him in August 2014. In response, McClure argues that two of the three people on the interview team knew about his previous lawsuit. He also emphasizes in his brief that one of the interviewers, Bailey, previously asked McClure about his "files" and asked if he was planning on "going through" with his EEOC charge. *See* Document #25 at 25-26.

7

McClure's first argument fails because "knowledge [of protected activity] alone cannot provide the causal link" in a retaliation case. *Pearson v. Massachusetts Bay Transp. Authority*, 723 F.3d 36, 42 (1st Cir. 2013) (Souter, J., sitting by designation).

As to McClure's second argument, McClure testified in his deposition that he set up a meeting with Bailey to discuss his February 2015 EEOC charge, and at that meeting Bailey said, "we have files too." *See* Document #19-6 at 45-47. McClure testified that he "believe[d] that what [Bailey] meant was that he may have had something on me as an employee that would make me look discreditable, maybe. That's what I'm assuming." *Id.* at 47. He further explained, "I'm not sure what he meant, but I just gave you a personal belief of mine." *Id.*

Absent more, Bailey's comment fails to raise an inference of a causal connection between any protected activity by McClure and the District's decision not to promote him to the Maintenance and Operations Supervisor position. It is evident that McClure himself had requested the meeting to discuss his EEOC charge with Bailey, so it follows that Bailey would discuss McClure's EEOC charge in that meeting. Most importantly, the record reveals that this meeting regarding the February 2015 EEOC charge came more than six months *after* the August 2014 decision not to promote McClure. *See id.* at 46-47. In some instances a decisionmaker's comments after an adverse employment action might imply he had a discriminatory intent during the previous adverse action. But Bailey's 2015 comment more than six months after the 2014 decision not to promote McClure is evidence far too thin to support a finding that McClure's 2010 lawsuit — or any of his protected activity — played a role in his nonpromotion. Because McClure has not put forth sufficient evidence to raise a genuine dispute of fact on the causation element of his prima facie case, his claim for retaliatory failure to promote necessarily fails.

McClure's complaint also asserts race discrimination and retaliation based on the elimination of his Preventative Maintenance Foreman position in 2015. The parties agree that the decision to eliminate McClure's position was part of a reduction in force in response to an impending loss of desegregation funding from the State of Arkansas. Since 2009, the District had been aware that desegregation payments would cease, which prompted ongoing discussions to determine what steps were needed to ensure financial stability. Over the course of several years the District implemented various cuts, including eliminating numerous positions, reclassifying positions at lower salaries, cutting benefits, and shortening employment contracts. In this process many maintenance foreman positions, including McClure's, were eliminated. Maintenance foreman positions held by both African Americans and Caucasian employees were eliminated. Document #19-6 at 57-59. The District has moved for summary judgment on all of McClure's claims, and has specifically addressed the discrimination and retaliation claims related to the elimination of McClure's position. However, McClure has not responded to the District's argument relating to his claims involving the elimination of his position during the reduction in force. He has therefore waived these claims. *See Denson v. Steak 'n Shake, Inc.*, 910 F.3d 368, 370 n.2 (8th Cir. 2018).

For the reasons explained, the District's motion for summary judgment is GRANTED. Document #19.

IT IS SO ORDERED this 15th day of April, 2019.

_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE